IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bruce Allen Roddy, #262113, aka Bruce Allen Roddey, | ) )  ) | C/A No.: 1:12-953-CMC-SVH |
| Petitioner, | ) )  | |
| vs. | ) )  | REPORT AND RECOMMENDATION |
| Cecilia R. Reynolds, Warden Kershaw Correctional Institution, | ) )  )  | |
| Respondent. | ) )  | |

Petitioner Bruce Allen Roddy, aka Bruce Allen Roddey,[1] is an inmate at the Kershaw Correctional Institution of the South Carolina Department of Corrections who filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against Warden Reynolds ("Respondent"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #20, #24]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by September 13, 2012. [Entry #25]. Petitioner filed a response on August 31, 2012. [Entry #27]. He subsequently filed a motion for hearing. [Entry #28]. Having carefully considered the parties' submissions

---

[1] Petitioner was indicted as and is incarcerated under the surname of "Roddey." *See* https://sword.doc.state.sc.us/scdc-public/.

and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted and Petitioner's motion for hearing be denied.

I.     Factual and Procedural Background

At trial, the victim testified that after leaving work late at night as a Bi-Lo grocery cashier, she stopped her car at an intersection with a flickering light.  She testified that while she was stopped at the intersection, Petitioner entered her car uninvited and intoxicated.   She testified that he directed her to take a left and that when she refused and told him to get out of her car, he threatened to pull a gun on her.   She noted that she felt compelled to obey and, after she drove to an abandoned house at Petitioner's direction, he sexually assaulted her in the car.   The victim testified that Petitioner next directed her to drive him to his friend's house, where he exited her car.   She testified she thereafter drove to her boyfriend's house, reported the assault, and subsequently went to the hospital where a nurse administered a rape protocol kit and the police took statements. The victim identified Petitioner from a lineup, and he was arrested. [Entry #20-2 at 21–35].

Petitioner was indicted by the York County grand jury in March 1999 for kidnapping (1999-GS-46-895) and first degree criminal sexual conduct (CSC) (1999-GS-46-896). [Entry #22-3 at 44–47].   He was represented by James J. Kasprzycki, Esq. at a jury trial on October 27–28, 1999 before the Honorable Lee S. Alford. [Entry #20-1 at 3]. At trial, the jury heard from, *inter alia*, the victim, her boyfriend, the nurse, law enforcement personnel, and the Bi-Lo manager.   The jury was also presented with a stipulation that semen found in the victim's underwear did not match Petitioner's DNA,

but did match that of her boyfriend.    Petitioner took the stand in his own defense, denying the assault and claiming that the victim merely gave him a ride to his friend's house.    After the jury convicted Petitioner as charged, Judge Alford sentenced him to 22 years for CSC and 20 years concurrent for kidnapping. [Entry #21-1 at 50].

Petitioner timely appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Aileen P. Clare of the South Carolina Commission on Appellate Defense who filed an *Anders*[2] brief raising the following issue: "Did the lower court err by denying appellant's motion for a directed verdict of not guilty?"   [Entry #22-1 at 17–22, 25–30].    Attorney Clare certified to the court that the appeal was without merit and asked to be relieved as counsel. [Entry #22-1 at 23]. In Petitioner's *pro se* response[3] to the *Anders* brief, he asked the Court of Appeals to review the SLED DNA analyst's report showing that his DNA was not present. [referenced in Entry #20 at 2].

On November 1, 2001, the Court of Appeals filed an unpublished decision dismissing Petitioner's appeal pursuant to the *Anders* procedure and granted counsel's

---

[2] *Anders v. California*, 386 U.S. 738 (1967).   *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.   *Anders*, 386 U.S. at 744.

[3] The *pro se* response to the *Anders* brief does not appear in the docket.

petition to be relieved. [Entry #22-1 at 31–32]. The remittitur was issued on December 11,

2001. [Entry #22-1 at 33].

Petitioner filed an application for post-conviction relief ("PCR") on November 28,

2001 [Entry #21-1 at 53–57], raising the following grounds:

1. Ineffective assistance of counsel:
   a. Attorney mishandled my testimony and withheld vital information;
   b. I was told I did not have to take the stand, I was told I should;
   c. Attorney informed me to take a plea bargain when I told him I was innocent; and
   d. Coercion withholding evidence.

[Entry #21-1 at 54].

Petitioner filed, through counsel, an amended PCR on July 17, 2007, alleging the

following additional grounds for relief:

2. Ineffective assistance of counsel
   a. Trial counsel failed to investigate and prepare adequately for trial;
   b. Trial counsel unreasonably failed to seek expert assistance regarding independent and objective, scientifically significant, exculpatory Deoxyribonucleic acid (DNA) evidence;
   c. Trial counsel failed to confront, rebut or utilize State's witnesses and evidence with available independent and objective facts and evidence, including failing to request additional, inexpensive and readily available definitive scientific testing;
   d. Trial counsel unreasonably failed to present readily available and favorable objective and independent defense witnesses and evidence, as well as demonstrative evidence;
   e. Trial counsel unreasonably and wrongly suggested reasons to the jury that the DNA and serological evidence might not be exculpatory or significant, contrary to Applicant's interests and to the evidence adduced at trial;
   f. Trial counsel unreasonably failed to prepare Petitioner for or to advise Petitioner about testifying at trial;
   g. Trial counsel unreasonably failed to object to the State's assertion that the victim was forthright in prosecuting the case when trial counsel knew or should have known that she had demonstrated she was not;

4

> > h. The cumulative impact of these errors and the resulting prejudice.

> 3. Prosecutorial misconduct for Brady violation in failing to disclose the fact that semen was identified on the victim's vaginal smear and that the victim materially equivocated in her assertions implicating Petitioner in crimes against her.

> 4. Juror misconduct.

[Entry #21-1 at 63–72].

After numerous discovery issues related to the PCR were raised to and ruled on by the PCR court, a PCR evidentiary hearing was held before the Honorable John C. Hayes III on September 28, 2007, at which Petitioner and his attorney, Diana Holt, Esq. appeared. [Entry #21-1 at 112 *et seq.*].   Attorney Holt presented testimony from Deputy Solicitor John Anthony, Lieutenant Beth Tolson, SLED agent Nancy Skraba, and the victim. [Entry #21-2 at 5–118].   Petitioner did not testify at the hearing. The State presented the testimony of trial counsel Kasprzycki.

On October 5, 2007, Judge Hayes entered an order of dismissal, addressing Petitioner's claims that trial counsel was ineffective because he failed to (1) investigate and prepare adequately for trial; (2) seek expert testimony on the DNA evidence; (3) present available favorable witnesses; (4) present an in-court demonstration of the sexual assault as well as present to the jury a "re-enactment" photograph of the incident; (5) to request additional scientific testing; (6) prepare Petitioner for direct and cross examination; and (7) obtain indigent status for Petitioner. [Entry #21-3 at 125–136]. The order of dismissal also denied Petitioner's claim of prosecutorial misconduct that the Solicitor's Office failed to reveal a re-enactment photo to defense counsel. [Entry #21-3 at 130–131]. Judge Hayes

indicated that, by a separate order, he had required the Solicitor to provide several documents identified in a privilege log. [Entry #21-3 at 132].

On October 16, 2007, Petitioner filed a Motion for a New Trial Pursuant to Rule 59(a) and (b), SCRCP, complaining, *inter alia*, of prosecutorial misconduct in the State's withholding information about statements made by the victim and notations made by the Deputy Solicitor in interview notes with the nurse who administered the rape kit. [Entry #22-2 at 55–70 ]. By order dated October 24, 2007, Judge Hayes denied Petitioner's motion for a new trial, but granted leave for Petitioner to amend his PCR application. [Entry #21-3 at 137–143]. Judge Hayes granted a rehearing on whether certain interview notations in the Solicitor's file should have been given to trial counsel, but were not. [Entry #21-3 at 142–143]. The pages concerned the victim's report of a pre-assault statement by Petitioner thanking the victim for her kindness in giving him a ride, as well as a notation that there was "no evidence of trauma." *Id.* at 138–140. Judge Hayes conducted an *in camera* review of the Solicitor's file to determine whether Petitioner was entitled to a re-hearing on this issue. [Entry #21-3 at 137]. On November 2, 2007, Petitioner filed a second motion to alter or amend [Entry #22-2 at 74–78], which Judge Hayes denied on November 5, 2007 [Entry #22-2 at 82].

Judge Hayes held Petitioner's rehearing on February 15, 2008. [Entry #21-3 at 77–117]. Attorney Holt represented Petitioner and presented testimony from Deputy Solicitor Anthony about the interview notations. [Entry #21-3 at 81–114]. On February 25, 2008, Judge Hayes filed a final Order of Dismissal, in which he denied relief on the

6

interview notation claim and reaffirmed the dismissal of the Application with prejudice. [Entry #22-2 at 84–86].

Petitioner appealed from the denial of PCR.  [Entry #23-2].  Appellate Defender M. Celia Robinson of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal and filed a petition for writ of certiorari in the South Carolina Supreme Court on September 15, 2008 [Entry #23-3] raising the following issues:

> 1. Did the PCR judge err in refusing to find that petitioner was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and state law where trial counsel failed to present beneficial and exculpatory evidence through in-court testimony but chose instead to enter into a stipulation as the result of counsel's misunderstanding of the law and did the PCR judge further err in failing to find that trial counsel's failure to consult the State's DNA experts or to consult with a defense DNA expert combined with his misstatement of the meaning and import of the DNA results before the jury constituted ineffective assistance of counsel?

> 2. Did the PCR judge err in refusing to find that petitioner was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and state law where trial counsel failed to investigate the case and failed to locate or present the testimony of a critical witness at trial?

> 3. Did the PCR judge err in failing to find that petitioner was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and state law where trial counsel failed to investigate the case and failed to acquire or present evidence to refute the victim's testimony regarding the lighting conditions at the site of her supposed carjacking?

> 4. Did the PCR judge err in failing to find that petitioner was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and

7

Fourteenth Amendments of the United States Constitution and state law where trial counsel failed to adequately cross-examine, failed to request leave to perform a demonstration before the jury, failed even to seek leave to demonstrate before the jury that the assault as described by the victim could not reasonably have taken place and, assuming that he was provided with a copy of the photograph, failed to present before the jury a photograph of a similarly sized woman sitting in the driver's seat of the victim's 1984 Camaro?

5. Did the PCR judge err in denying relief where the State failed to disclose, in violation of its duties under Rule 5, SCRCrimP and *Brady v. Maryland*, 373 U.S. 83 (1963), the solicitor's interview notes which contained evidence helpful to the defense?

6. Did the PCR judge err in failing to find that petitioner was denied the right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and state law where trial counsel failed to prepare petitioner to testify on direct or cross-examination prior to trial?

7. Did the PCR judge err in refusing to consider the proffered evidence and in failing to find that petitioner was entitled to a new trial in the interests of justice in light of evidence proffered which established that this victim was responsible for bizarrely and falsely accusing another man, William Boone, of raping her?

[Entry #23-3 at 3].

The South Carolina Supreme Court granted certiorari on April 7, 2010. [Entry #23-5].   However, after briefing by the parties [Entry #23-6, #23-7], the court subsequently filed a Memorandum Opinion on March 21, 2011, dismissing the writ of certiorari as improvidently granted. [Entry #23-8].   The remittitur was issued on April 6, 2011.   [Entry #23-9].

Petitioner filed this federal petition for a writ of habeas corpus on March 29, 2012. [Entry #1].[4]

II.    Discussion

    A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**    Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to present beneficial and exculpatory evidence through in-court testimony by entering into a stipulation that undermined the petitioner's defense. Trial counsel failed to consult the State's DNA experts or to consult with a DNA expert, specifically, the DNA test results of the SLED agent Nancy J. Skraba who would have testified that the semen found on the victim does not match the DNA profile of the petitioner.

**Ground Two:**    Brady Violation/Abuse of Discretion

Supporting Facts: State failed to disclose the solicitor's interview notes which contained evidence helpful to the defense. Also, State did not disclose "privilege log" until after the PCR Judge issued order denying relief.

**Ground Three:**    Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to investigate the case and failed to locate or present the testimony of a critical witness at trial.

---

[4] The petition was received by the court on April 2, 2012 and docketed on April 5, 2012. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988). Petitioner dated and deposited his petition in the prison mailing system on March 29, 2012. [Entry #1 at 16, #1-1 at 2].

**Ground Four:**      Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to adequately cross-examine, failed to request leave to perform a demonstration before the jury, and failed to present before the jury a photograph of a similarly sized woman sitting in the driving seat of victim's 1984 Camaro which would have shown that the assault as described by the victim was unreasonable.

**Ground Five:**      Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to prepare petitioner to testify on direct or cross-examination prior to trial because he did not want and was not going to put petitioner on the stand. Petitioner went against counsel's advice because he felt counsel had already failed to present an adequate defense and had botched the trial.

**Ground Six:**      Ineffective Assistance of Counsel

Supporting Facts: Trial counsel failed to investigate the case and failed to acquire or present evidence to refute the victim's testimony regarding the lighting conditions at the site of her supposed carjacking. Counsel failed to present evidence from the York County Electric Cooperative which would have contradicted victim's account of the incident at trial.

**Ground Seven:**      Abuse of Discretion

Supporting Facts: PCR Judge abused his discretion in refusing to consider proffered evidence and in failing to find that petitioner was entitled to a new trial in the interest of justice in light of proffered evidence which established that the victim was responsible for also falsely accusing one "assault victim" of raping her six years after the petitioner's conviction.

[Entry #1 at 6–13].

B.      Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

11

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.   Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions.   28 U.S.C. § 2254.   This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal

12

court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

    a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)     the applicant has exhausted the remedies available in the courts of the State; or

        (B)     (i) there is an absence of available State corrective process; or

                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies

13

available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A).   In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).   If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[5] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States pre Court has held that "state prisoners must give the state courts

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162−65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.   Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000)(internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan.*" 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue

15

review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

### b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.   As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 162 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim.     *Id.*     Absent a showing of "cause," the court is not required to consider "actual prejudice."     *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694

17

(1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of

18

fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.,* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.     Analysis

1.     Procedurally-Barred Grounds

Respondent contends that Petitioner's Grounds Three and Five are procedurally-barred.   The undersigned agrees.

a.     Ground Three

In Ground Three, Petitioner alleges counsel was ineffective in failing to investigate the case and failing to locate or present the testimony of a critical witness at trial. [Entry #1 at 9]. In his petition and response, Petitioner does not identify the critical witness or otherwise provide details about what evidence a further investigation would have revealed. Respondent assumes, as does the court, that Petitioner's claim concerns counsel's failing to call Greg Hefley as a witness at trial. Petitioner did not present this claim in his original or amended PCR application, and it was not discussed in the PCR court's Order of Dismissal, aside from noting that trial counsel testified at the PCR hearing that he had "tried to contact a potential witness named Gregg, but was unsuccessful." [Entry #21-3 at 133]. Petitioner first raised this allegation of ineffective assistance of counsel in his second Rule 59 motion,

and the PCR court denied the motion, noting the issue was not timely raised. [Entry #21-3 at 142].   Under South Carolina law, issues that were neither raised to nor ruled upon by the PCR court are not preserved for appellate review. *Kolle v. State*, 690 S.E.2d 73, 79 (S.C. 2010).   Respondent argues that the PCR court's denial of Petitioner's successive Rule 59 motion was insufficient to exhaust Ground Three in state court.

The South Carolina Supreme Court's order denying Petitioner's writ of certiorari from the PCR court's order of dismissal does not provide the basis for its denial.   It is not clear from the face of that order whether the denial was based on application of federal constitutional law or, as Respondent suggests, on an independent and adequate state law ground, including procedural default.   If the determination of the South Carolina Supreme Court rests on independent and adequate state law grounds, then there is no federal habeas review of that decision available. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Where circumstances make it clear that "claims presented to the state court were subject to summary denial on procedural grounds under state law," the federal court may presume that the denial "fairly appears" to rest on an adequate and independent state ground. *Coleman v. Thompson,* 501 U.S. 722, 738 (1991); *Wilson v. Moore,* 178 F.3d 266, 276 (4th Cir.1999). In the instant case, no circumstances suggest anything other than that the dismissal was upon state procedural grounds.   Therefore, no federal habeas review is available.

b.     Ground Five

In Ground Five, Petitioner alleges that trial counsel failed to prepare him to testify on direct or cross-examination prior to trial.   [Entry #1 at 13]. Petitioner notes that trial counsel did not want or plan to have Petitioner take the stand and that Petitioner went against trial counsel's advice in taking the stand. [Entry #1 at 13]. Petitioner argues that he took the stand because he felt counsel had already failed to present an adequate defense and had "botched the trial." *Id.*

Petitioner defaulted on this claim by having failed to testify at PCR in support of the claim and presenting a different argument in his PCR appeal. In the second page of his amended PCR application, Petitioner stated that he was deprived of his right to the effective assistance of counsel in that trial counsel "(vi) unreasonably failed to prepare [Petitioner] for or to advise [Petitioner] about testifying at trial." [Entry #21-1 at 64]. There is no further discussion in the PCR application about this claim.   Petitioner did not testify at the PCR hearing, but the State presented the testimony of trial counsel. The PCR court found that the only evidence demonstrated that Petitioner took the stand against trial counsel's advice, thereby "hoist[ing] himself on his own petard" and being thereby unable to fault trial counsel for calling him to the stand. [Entry #21-3 at 133].   Therefore, the issue addressed by the PCR court was the fact of Petitioner testifying against his trial counsel's advice.   Instead, on appeal, Petitioner's argument focused on trial counsel's alleged failure to prepare Petitioner to testify on direct or cross-examination prior to trial.   Under

state court procedure, the state supreme court has held that such issues not presented to the trial judge are not preserved for consideration on appeal. *Harris v. State*, 581 S.E.2d 154 (S.C. 2003).

Therefore, to the extent that these grounds were not properly raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

### 2.    Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these grounds. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.

1996) (in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88−91; *Murray,* 477 U.S. at 496; *Rodriguez,* 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule.   *Murray,* 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these grounds. Petitioner had a trial, a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues.   However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve the issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be

"truly extraordinary."  *Id.*   The court's review of the record does not support a showing of actual innocence.

During the trial, witnesses testified to the facts summarized in the Factual Background section above. In light of the foregoing, Petitioner cannot show actual innocence, and therefore, the procedural bar applies.

Respondent does not dispute that Petitioner's remaining arguments have been properly exhausted.   Therefore, they are addressed on their merits below.

　　　　　3.　　Ground One

In Ground One, Petitioner takes issue with his trial counsel having stipulated to the results of the DNA test results of SLED agent Skraba, rather than requiring her to testify at trial that the semen found on the victim did not match Petitioner's DNA. [Entry #1 at 6]. Petitioner claims that the stipulation undermined his defense and that trial counsel should have consulted with a DNA expert.

At the PCR hearing, trial counsel testified he did not subpoena Agent Skraba because he relied upon the Deputy Solicitor's prior representation that the agent would be present at trial. [Entry # 21-3 at 29].   At trial, the Deputy Solicitor informed trial counsel that Agent Skraba was unavailable to testify, and trial counsel was concerned that without her testimony, he might be otherwise unable to introduce to the jury the fact that Petitioner's semen was not present in the DNA testing of the victim's underwear. *Id.* Trial counsel and the Deputy Solicitor agreed to stipulate to the admission of Agent Skraba's DNA testing reports.

24

The PCR court found that trial counsel was not ineffective in failing to subpoena Agent Skraba and relying instead on the stipulation. The PCR court found that the jury was aware that the semen found in the victim's underwear did not match Petitioner's DNA, but that it was that of her boyfriend. [Entry #21-3 at 128, 132]. The court noted the DNA results did not establish any factual evidence favorable to the State or detrimental to Petitioner, but the converse, and that trial counsel's failure to present scientific evidence or consult with Agent Skraba on the DNA issue "does not come close to establishing any proof of ineffective assistance." *Id.* at 132–134.

The undersigned finds that the state court's rejection of Petitioner's claim was not contrary to and did not involve an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1) because Petitioner cannot "show that the state court's ruling on the [ineffective assistance claim] was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 787.

Trial counsel's defense strategy was to demonstrate that the victim was not truthful. [Entry #21-3 at 1]. The defense noted the absence of DNA or other forensic evidence linking Petitioner to the sexual assault. *Id.* at 1, 4, 19. Trial counsel believed that the stipulation succinctly provided the jury with the relevant information that Petitioner's DNA did not match the semen found on the victim's underwear. *Id.* at 28–31. The trial record reflects at least five times when the jury was explicitly informed of the lack of DNA evidence linking Petitioner to the crimes. [Entry #20-2 at 20–21, 64; #20-3 at 55, 66–67,

25

127–128]. As Respondent argues, the absence of testimony from Agent Skraba or another DNA expert would not have added anything of value to the defense beyond the stipulation.

Petitioner has failed to demonstrate that the PCR court's factual findings are objectively unreasonable under § 2254(d)(2). Petitioner's argument that a defendant cannot dictate the manner in which a prosecution tries its case by stipulation is inapposite. Even if the court were to find that trial counsel's trial strategy was not reasonable in light of the circumstances, Petitioner has failed to demonstrate prejudice. Because the jury received the same DNA evidence from the stipulation that it would have received through expert testimony, Petitioner has failed demonstrate how he was prejudiced by the failure of trial counsel to have a DNA expert testify. Similarly, trial counsel's failure to interview Agent Skraba was not ineffective or prejudicial, as the information to which she would have testified was contained in her reports, with which Petitioner's counsel was familiar.

The undersigned recommends the court grant Respondent summary judgment on Ground One.

### 4.     Ground Two

In Ground Two, Petitioner alleges a *Brady*[6] violation in the Solicitor's failure to timely disclose his interview notes and privilege log. [Entry #1 at 7]. At the PCR hearing, the Deputy Solicitor was asked if he had brought his entire file with him, and he answered

---

[6] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" *Cone v. Bell*, 129 S. Ct. 1769, 1772 (2009) (*citing Brady*).

that collateral counsel had not asked him to do so. [Entry #21-2 at 5]. Collateral counsel argued to the PCR court that she had unsuccessfully attempted to obtain the entire file by subpoena. [Entry #21-2 at 23–25]. The Solicitor's Office represented that it had provided collateral counsel with all documents that were not protected by the work product doctrine. [Entry #21-2 at 29].   After the PCR hearing, the PCR judge conducted an *in camera* review of the Solicitor's file and its privilege log and required, by separate order dated October 1, 2007 (and filed October 12, 2007), that the Solicitor provide Petitioner several documents from its file that the judge determined were not work product. [Entry #21-3 at 125–136]. The PCR court's order denying PCR was dated October 5, 2007 (and filed October 8, 2007).   *Id.*   In his first Rule 59 hearing (styled as a motion for a new trial 59(a) and (b)), Petitioner complained (1) that he had not received a copy of the privilege log the Solicitor had provided the PCR court, alleging the ex parte communication constituted misconduct; and (2) that the PCR judge had not allowed collateral counsel to review the non-work product documents prior to issuance of the court's order denying PCR relief. [Entry #22-2 at 55–70]. Petitioner noted his intention to amend his PCR application to include a *Brady* violation for the Solicitor's withholding of the interview note that Petitioner had thanked the victim for her kindness in giving him a ride, claiming it was impeaching and corroborated his account that there was no sexual assault.   [Entry #22-2 at 56, n.2]. Petitioner also claimed that the Solicitor improperly withheld a statement by the nurse that there was no evidence of trauma, especially in light of the nurse's testimony on cross-examination that the victim had redness of her labia that might just as well be from an

27

urinary infection or from "blunt force trauma." [Entry #22-2 at 63]. The PCR court permitted Petitioner to amend his PCR application to add the *Brady* violation claim and granted a hearing, held on February 15, 2008, at which the Deputy Solicitor testified. [Entry #22-2 at 46–52].

The PCR court filed an order denying relief on the *Brady* claim concerning Petitioner's thank you comment. Specifically, the PCR court noted it could not determine why Petitioner made the statement, whether in earnest or as a taunt (as the Deputy Solicitor testified he understood it), but that in any event, it "has no more exculpatory value to [Petitioner] than such a statement from a bank robber to a teller handing over the loot with a gun to her head." [Entry #22-2 at 85]. Respondent argues that Petitioner is not entitled to relief on this claim because he failed to demonstrate a *Brady* violation. The undersigned agrees that the PCR court's factual findings are not objectively unreasonable under § 2254(d)(2) and Petitioner cannot demonstrate that the state courts' denial of relief on this ground was contrary to or an unreasonable application of clearly established Supreme Court precedent, as required under § 2254(d)(1).

To prove a *Brady* violation, Petitioner must demonstrate that evidence was (1) favorable to him; (2) in the possession of or known by the prosecution, but nevertheless suppressed by the State; and (3) material to his guilt or innocence or was impeaching. *E.g.*, *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). He has failed to do so. The record does not reflect that the thank you statement was favorable to Petitioner, as the Deputy Solicitor who took the witness statement testified that he interpreted it as a taunt by

28

Petitioner. [Entry #21-3 at 90; #22-2 at 85]. Further, it was not material to Petitioner's guilt or innocence because it does not confirm Petitioner's version of the events. It cannot be otherwise impeaching because the statement was merely reported, not made, by the victim, and Petitioner did not take the stand.   As the PCR court noted, Petitioner was attempting "to flip a statement he allegedly made to the victim before the assault and after the victim stopped the car into something exculpatory." [Entry #22-2 at 48]. To the extent that the victim's report of the statement could be argued as impeaching her testimony of the events, it cannot be said that it "could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Stickler*, 527 U.S. at 281.   Finally, the thank you statement was contained in the nurse's notes provided to trial counsel, demonstrating it was reasonably available to Petitioner through another source.   [Entry #22-3 at 31]; *United States v. Kelly*, 35 F.3d 929, 937 (4th Cir. 1994) ("*Brady* rule does not apply if the evidence in question is available to the defendant from other sources; thus, when defense counsel could have discovered the evidence through reasonable diligence, there is no *Brady* violation if the Government fails to produce it.") (internal quotations omitted).

Petitioner is likewise not entitled to habeas relief on the nurse's statement concerning the lack of trauma on the victim's labia.  A review of the record reveals that the information concerning the lack of trauma was not the nurse's own assessment (and thereby possibly contradictory to her trial testimony about the victim's inflammation and her reddened labia [Entry #20-2 at 95, 105–106]), but referred to the finding in Dr. Zelner's pelvic exam notes [Entry #22-3 at 28 ("No evidence of trauma")]. [Entry #20-2 at 97 (nurse

testified "Dr. Zelner did not note any abnormalities at that time.")]. Because this statement cannot be considered impeaching of the nurse, it does not qualify as a *Brady* violation and dismissal of Ground Two is appropriate.

### 5. Ground Four

In Ground Four, Petitioner claims trial counsel failed (a) to adequately cross-examine, (b) to request leave to perform a demonstration before the jury, and (c) to present a photograph of a similarly-sized woman sitting in the driving seat of the victim's 1984 Camaro to show the impossibility of the alleged assault considering Petitioner's 6'1" frame. [Entry #1 at 11, #27 at 10]. At trial, the victim testified that Petitioner "told me to push back the seat and put up the steering wheel because I have tilt steering and he proceeded to pull down my pants and panties and did the same thing with himself and [he] got over on my side of the car." [Entry #20-2 at 29]. She testified that after sexually assaulting her digitally and having vaginal intercourse with her, Petitioner returned to the passenger seat, put on his pants, and directed her to drive. [Entry #20-2 at 31–32].

The PCR court rejected Petitioner's claim of ineffective assistance of counsel on these claims, finding that trial counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that is expected of an attorney who practices criminal law in South Carolina. [Entry #21-3 at 127–144].

### a. Cross-Examination

Trial counsel cross-examined the victim at length and challenged her account of the assault, including asking the following questions about the logistics of the assault in the

30

car:

- You have already testified that this is the position that the seat was in with the steering wheel tilted up and the seat back?
- So it is your testimony then that he was able to get on top of you while you were in the driver's seat with that steering wheel?
- How? I don't mean to be explicit about it, but I think the jury needs to know how did he get on top of you supposedly?
- And while he was on top of you with the steering wheel tilted behind him, he was able to unzip your pants and remove them?
- So then when he climbed on top of you he was at least bottomless at that point in time?
- He removed your pants separately, he removed your pants then took your panties off after that?
- Didn't do it all at once according to your testimony?

[Entry #20-2 at 54–56].

In his ineffective assistance of counsel claims, Petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. The undersigned's review of the record reflects, as an initial matter, that the PCR court's findings are not objectively unreasonable under § 2254(d)(2). Further, the PCR court's rejection of Petitioner's claim does not meet the highly deferential standards in tandem. Federal law provides that cross-examination of witnesses is a tactical decision of counsel, afforded great deference by reviewing courts. *Strickland,* 466 U.S. at 689; *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978) *(Marzullo* not intended to promote judicial second-guessing on questions of strategy as basic as handling of a witness). Therefore, the PCR court's denial of Petitioner's claim that trial counsel's method of cross-examination amounted to

ineffective assistance was a reasonable application of controlling federal precedent and the

claim should likewise be rejected here.

           b.        In-Court Demonstration

Petitioner alleges his trial counsel was ineffective for failing to request leave to

perform a re-enactment in front of the jury to show the impossibility of the assault. In

rejecting his claim, the PCR court found as follows:

> Applicant also argues the Court erred in not allowing an in court reenactment
> by the victim of the criminal sexual assault. The Court here affirms its earlier
> ruling on the record.
>
> In-court demonstrations are always problematic for the simple reason that
> they are staged. The actual event cannot be completely accurately
> represented. PCR counsel's attempt at a reenactment of the assault, which
> allegedly occurred on the driver's side of a vehicle, was to be by utilizing
> courtroom chairs. Other than a car seat and a chair both being a seat, the two
> are substantially different, i.e. tilt versus no tilt. Also, the vehicle's steering
> wheel would be incapable of replication in the proposed demonstration.
> Without ruling that trial counsel should have attempted an in-court
> demonstration, it would seem that to be even remotely accurate, any post
> event replication would have required the actual car, a car of the same type,
> or a to scale replica of the car. Additionally, photographs of the actual car in
> which the sexual assault is alleged to have occurred were placed in evidence
> and showed the seat and steering wheel positioned (by the victim's
> testimony) as they were at the time of the sexual assault. (TR, p. 152, L 21–
> p. 153 L 18; p. 268 L 4–p. 269 L 25).

[Entry #21-3 at 129–130].

In addition to a lengthy cross-examination, trial counsel spent most of his closing

argument on the victim's alleged lack of credibility and inconsistencies in her account,

highlighting the same points that a re-enactment would have achieved.  [Entry #20-3 at

112–130]. Petitioner assumes that a re-enactment would have been permitted by the trial

judge, which the undersigned finds doubtful for the same reasons recited in the PCR court's order.   At PCR, collateral counsel sought to have the victim participate in a re-enactment, and the judge sustained the objection by the State that collateral counsel was "re-victimizing the [victim]" and "retrying what the jury has already heard . . . a description of." [Entry #21-2 at 76–78].   The undersigned finds no basis on which to reject the PCR court's ruling that trial counsel's representation was ineffective in regard to the demonstration.

### c.    Photograph

At the PCR hearing, Beth Tolson of the York County Sheriff's Department testified that she was the woman pictured seated in the driver's seat of Plaintiff's Camaro in a photograph in the Solicitor's files.   [Entry #21-2 at 42–43].   Trial counsel testified that he was uncertain if he had seen the photograph. [Entry #21-3 at 3]. The PCR judge rejected Petitioner's claim that trial counsel was ineffective for failing to introduce the photo to the jury:

> Since trial counsel was unclear as to whether or not he had, prior to trial, seen the re-enactment picture, Applicant argues ineffectiveness in trial counsel's failure to use the photograph in defense of Applicant, if he had in fact seen them.

> The Court concedes that if trial counsel knew of the photograph, trial counsel could have and perhaps should have used the photograph in Applicant's defense at trial. However, based on the totality of the evidence and counsel's representation of Applicant, the Court concludes that Applicant has not proven that but for counsel's error[FN3] there is a reasonable probability the result at trial would have been different. Applicant has failed to prove that any error here, if any, undermined confidence in the outcome of the trial.

> FN3 We are of course assuming trial counsel saw the photograph for this analysis even though the record is not clear that trial counsel in fact saw the photograph. This analysis in response to Applicant's alternative argument as to the photograph.

[Entry #21-3 at 131–132 (internal citations omitted)].

A review of the record reveals that the jury was presented with photographs of the victim's car and heard testimony concerning how the assault took place in the car, including the position of the steering wheel during the assault. The jurors were able to observe the relative heights, weights, and other physical characteristics of Petitioner and the victim.

As the PCR court found, Petitioner cannot demonstrate the required prejudice under *Strickland* deriving from trial counsel's failure to provide the jury with a re-enactment photograph of Lieutenant Tolson sitting in the victim's Camaro, assuming trial counsel received the photograph. [Entry #21-3 at 131–132]. That is, there is no reasonable probability that the results of the trial would have been different if counsel had used the photo. [Entry #21-3 at 131]. Lieutenant Tolson herself testified at the PCR hearing that she felt the assault could have happened in the manner victim described. [Entry #21-2 at 48–49]. Contrary to Petitioner's assertion, the photo was not so critical to his defense that there is a reasonable probability that the jury would not have found him guilty had it been introduced.

The undersigned finds that the PCR court's finding as to Ground Four was not contrary to or an unreasonable application of clearly established Supreme Court

34

jurisprudence and recommends the claim be dismissed.

      6.     Ground Six

In Ground Six, Petitioner claims trial counsel failed to investigate the case and present evidence to refute the victim's testimony regarding the lighting conditions of the carjacking. [Entry #1 at 13]. Specifically, Petitioner claims counsel failed to present evidence from the York County Electric Cooperative's maintenance history records disputing the victim's claim that the streetlight at the intersection where Petitioner entered her car was malfunctioning. The maintenance records showed that no one had reported any malfunctioning streetlights in the area from installation to beyond the date of the victim's sexual assault. [Entry #21-2 at 33–35]. The PCR judge dismissed this claim because Petitioner presented "no testimony as to whether the light was functioning on the night in question." [Entry #21-3 at 128].

The undersigned submits that the PCR court's factual findings are not objectively unreasonable under § 2254(d)(2) and that Petitioner cannot demonstrate that the state courts' denial of relief on this ground was contrary to or an unreasonable application of clearly established Supreme Court precedent, as required under § 2254(d)(1). Evidence of an absence of reports to the power company of a light malfunctioning does not prove that the light was working properly on the night Petitioner entered the victim's car. Further, the PCR court's finding of no prejudice is supported by Petitioner's own testimony that he entered the victim's car at the intersection she testified to, minimizing the potential impeachment value of the power company's records. [Entry #20-2 at 23–25 (victim's

testimony); #20-3 at 49–50 (Petitioner's testimony)].   The undersigned recommends dismissal of Ground Six.

       7.    Ground Seven

In Ground Seven, Petitioner alleges the PCR judge abused his discretion in refusing to consider proffered evidence and in failing to find a new trial warranted.   [Entry #1 at 13]. Petitioner's proffered evidence allegedly demonstrates the victim falsely accused another person of sexually assaulting her six years after Petitioner's conviction. Respondent argues that Ground Seven fails to state a claim on which federal habeas corpus relief may be granted.   The undersigned agrees.   Because after-discovered evidence does not implicate an independent constitutional violation having occurred in the underlying state criminal proceeding, Petitioner's Ground Seven provides no avenue for habeas relief, and it should be dismissed.   *Herrera v. Collins*, 506 U.S. 390 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

## IV.    Conclusion

Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding the issues on their merits. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of the issues given the evidence and record before it.

Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determinations and has failed to show he is entitled to federal habeas corpus relief.

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #24] be granted, and Petitioner's motion for hearing [Entry #28] be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 18, 2013                                  Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).